IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STERLING NATIONAL BANK, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BERNARD N. BLOCK, TRUSTEE, ET AL., )<br>)<br>Defendants. )<br>)<br>_____)<br>)<br>BERNARD N. BLOCK, TRUSTEE, ET AL., )<br>)<br>Counterclaim-Plaintiffs, )<br>)<br>v. )<br>)<br>STERLING NATIONAL BANK, )<br>)<br>Counterclaim-Defendant. )<br>_____) | Case No. 16-cv-9009<br><br>Honorable Harry D. Leinenweber<br>Magistrate Judge Maria Valdez |

**STERLING NATIONAL BANK'S MEMORANDUM
IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

Defendants ("Sellers") move to strike five entries from Sterling National Bank's ("Sterling Bank") Fifth Amended Rule 26(a)(1) Initial Disclosures. The five entries are Damian Services Corporation ("Damian") clients expected to have knowledge regarding Damian's invoicing and billing practices. Sellers do not dispute that they were already aware of these Damian clients. Nor could they—they were Damian's clients when Sellers owned Damian. Sellers also do not dispute that they knew that these clients were likely to have discoverable information.

Sterling Bank's disclosures are timely because Sellers had, and have, sufficient time to depose any witnesses. They have known of these witnesses since January 2017, when Sterling

Bank identified all five Damian clients in answers to Sellers' interrogatories. Further, Sterling Bank specifically disclosed Damian's clients as likely to have discoverable information in its disclosures served November 15, 2017, and, after a meet and confer pursuant to Local Rule 37.2, narrowed that list to five on December 4, 2017.

Sellers do not dispute that they were aware of these Damian clients or that they had (and still have) time to depose them. Rather, Sellers use this motion as a back-door attempt to take more than ten depositions. Having made the strategic choice to not depose Damian's clients, Sellers should not be permitted to take in excess of the ten depositions allowed by Rule 30(a)(2)(A)(i).

## BACKGROUND

This case arises out of Sellers' sale of their company, Damian, to Sterling Bank. Damian's officers engaged in a scheme to backdate invoices sent on behalf of its clients. Sellers failed to disclose this backdating scheme to Sterling Bank when Sellers sold Damian to Sterling Bank.

Damian's clients were temporary staffing agencies that received short term funding from Damian to pay temporary workers procured with various companies. The fees and interest charged by Damian were tied to the number of days that the invoices remained unpaid. Shaving four or five days off of an invoice results in higher fees and late charges to Damian's clients.

Months after the sale, Sterling Bank learned that Damian had been backdating invoices sent on behalf of its clients. Sterling Bank undertook an investigation into Damian's conduct. As part of this investigation, Sterling retained a forensic examiner, AlixPartners, LLP, to review Damian's invoicing history and determine how much Damian overcharged each client.

The five Damian clients Sellers seek to strike from Sterling Bank's disclosures are: Powertemp Services, Inc., Reassent Consulting, Wolf Retail Solutions, Professional Personnel, and Flexible Staffing. Sellers were aware that Damian overcharged each of these clients because each was a Damian client before Sellers sold Damian to Sterling Bank.

Further, on December 11, 2015, before this lawsuit was filed, Sterling Bank provided notice of an indemnity claim identifying Powertemp Services, Inc. as a Damian client that had complained of overcharges. (*See* Exhibit 1 at SNB0219045-46.) Sterling Bank's initial Complaint likewise identified that Damian's clients, including Reassent Consulting, had complained about the backdating scheme. (Dkt. No. 1, Complaint ¶ 22).

During this litigation, Sterling Bank has provided notice to Sellers that each of these five Damian clients were likely to have discoverable information. Sterling Bank did so (1) in their interrogatory answers, (2) in their document production, (3) through documents marked at depositions in the case, and (4) in their Rule 26(a)(1) disclosures:

**Sterling Bank's Interrogatory Answers**

On January 27, 2017, Sterling Bank answered Sellers' interrogatory requests. (Exhibit 2.) Sterling Bank's answers to Sellers' interrogatory requests identified each of the five Damian clients that Sellers now seek to strike. Sterling Bank's answers identified two of these clients—Powertemp Services, Inc. and Reassent Consulting—as complaining about Damian's invoicing practices before Sterling Bank acquired Damian. (Exhibit 2 at 8.) Sterling Bank's answers also attached a chart identifying Damian clients that had received refunds due to Damian's backdating scheme—including all five Damian clients that Sellers now seek to strike. (Exhibit 2 at 5-6 and Exhibit A thereto.)

3

**Sterling Bank's Document Production**

In May 2017, Sterling Bank produced documents from the forensic investigation conducted by AlixPartners, LLP, including a "Calculation of Amount Due to Clients," identifying **each** client overcharged by Damian and the amount due to each. (Exhibit 3.) **All five** of the Damian clients Sellers seek to strike are included on the calculation Sterling Bank produced in May 2017.

**Documents Marked At Depositions**

Sterling Bank has marked several documents at depositions of Damian's former employees identifying particular Damian clients that have complained about the invoice backdating scheme, including Powertemp Services, Inc. and Reassent Consulting. (*See, e.g.* Exhibits 4 & 5.)

**Rule 26(a)(1) Disclosures**

On November 15, 2017, Sterling Bank served its Fourth Amended Rule 26(a)(1) Disclosures identifying "[f]ormer clients of Damian, including those identified in Sterling Bank's Complaint, Responses and Objections to Defendants' First Set of Interrogatories, documents marked as exhibits at depositions, and the AlixPartners LLP documents previously produced." (Dkt. No. 93-2 at 4.)

On November 27, 2017, following Sterling Bank's Fourth Amended Rule 26(a)(1) Disclosures, the parties held a meet and confer conference during which Sterling Bank agreed to narrow the list of potential Damian clients. On December 4, 2017, Sterling Bank served its Fifth Amended Rule 26(a)(1) Disclosures identifying five Damian clients by name. (Dkt. No. 93-1 at 4.)

**ARGUMENT**

I. **STERLING BANK'S AMENDED RULE 26(a)(1) DISCLOSURES ARE TIMELY AND DO NOT VIOLATE RULE 26(e).**

   A. **Sterling Bank's Amended Disclosures Are Timely Because Sellers Had, And Have, Sufficient Time To Depose Any Witnesses.**

Sellers do not dispute that they know who Damian's clients were (as they previously owned Damian), nor do they dispute that the Damian clients they seek to strike were identified in (1) Sterling Bank's Complaint, (2) Sterling Bank's interrogatory answers, (3) AlixPartners LLP documents that Sterling Bank produced, (4) in documents marked as exhibits during depositions, and (5) Sterling Bank's amended disclosures.

Sellers' characterization of Sterling Bank's disclosures as made at the "eleventh hour" is misleading at best. Sellers have known that Damian's clients were likely to have discoverable information since at least January 2017, when Sterling Bank identified all five Damian clients now at issue in its answers to Sellers' interrogatories. (Exhibit 2 at 5-6, 8, and Exhibit A thereto.) Further, Sterling Bank specifically disclosed Damian's clients as likely to have discoverable information in their November 15, 2017 Fourth Amended Rule 26(a)(1) Disclosures—nearly a month ago (and a month and a half prior to the current December 31, 2017 close of discovery). (Dkt. No. 93-2 at 4.) Following Sterling Bank's Fourth Amended Rule 26(a)(1) Disclosures, the parties held a meet and confer conference during which, in an attempt to reach a resolution without the intervention of the Court, Sterling Bank offered to narrow the list of potential Damian clients, and Sellers accepted. Sterling Bank served its Fifth Amended Rule 26(a)(1) Disclosures on December 4, 2017, identifying five Damian clients by name. (Dkt. No. 93-1 at 1.) This is exactly how the meet and confer process is intended to work under Local

5

Rule 37.2. Yet, now Sellers object to Sterling Bank's disclosures and seek to strike them improperly characterizing them as "last minute" disclosures.

Notably, Sellers do not argue that Sterling Bank's amended disclosures left them with insufficient time to depose any of these witnesses. (*See* Dkt. No. 93 ¶ 6 (arguing that Defendants "do not…have a chance to depose [the witnesses] by the close of fact discovery on December 31, *when Sterling opposes additional witness depositions*." (emphasis added).) Thus, all of the cases Sellers cite are inapposite. *See United States v. Dish Network, L.L.C.*, No. 09-3073, 2016 U.S. Dist. LEXIS 289, at *22 (C.D. Ill. Jan. 4, 2016) (excluding witnesses identified on trial witness list after the close of discovery); *Lujano v. Town of Cicero*, No. 07 C 4822, 2011 U.S. Dist. LEXIS 148913, at *18 (N.D. Ill. Dec. 23, 2011) (striking affidavits of witnesses not identified in Rule 26(a)(1) disclosures); *Ill. Comput. Research, LLC v. Harpo Prods.*, No. 08 C 7322, 2010 U.S. Dist. LEXIS 51977, at *18 (N.D. Ill. May 26, 2010) (striking 24 witnesses disclosed after the Court ruled on summary judgment and claim construction); *Finwall v. City of Chi.*, 239 F.R.D. 504, 505-06 (N.D. Ill. 2006) (excluding expert testimony where plaintiff disclosed three complete expert reports five business days prior to the close of expert discovery, and one further expert report only two business days prior to the close of discovery); *Engate, Inc. v. Esquire Deposition Servs. LLC*, No. 01 C 6204, 2005 U.S. Dist. LEXIS 4926, at *3 (N.D. Ill. Mar. 29, 2005) (striking witnesses identified in pre-trial order that were *never* identified in Rule 26(a)(1) disclosures).

Sterling Bank's amended disclosures are timely since Sellers have had ample time to depose these witnesses. Sellers (1) have known of Damian's clients since before this lawsuit was filed, (2) were put on notice since January 2017 when Sterling Bank served its answers to Sellers' interrogatory requests specifically identifying these clients, (3) were served with

6

amended disclosures on November 15, 2017 identifying Damian's clients as potential witnesses "likely to have discoverable information," and (4) were served with further amended disclosures on December 4, 2017 narrowing the list of potential Damian clients to five specific clients. Even if Sterling Bank had only disclosed the Damian clients on December 4, 2017, Sellers had, and still have, ample time to depose five witnesses as discovery is only set to close on December 31, 2017.[1] (Dkt. No. 90.) Thus, Sellers' argument that Sterling Bank's disclosures are untimely has no merit.

### B. Sterling Bank's Amended Disclosures Do Not Violate Rule 26(e) Because Sellers Knew Damian's Clients Were Likely To Have Discoverable Information.

Rule 26(e)(1)(A) requires a party to supplement its initial disclosures "in a timely manner" if the disclosure is "incomplete or incorrect, *and* if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Here, Sellers do not dispute that the identity of the five Damian clients has been made known to Sellers "during the discovery process or in writing." For this reason alone, Sellers' argument must fail.

The relevant analysis is whether Sellers "knew of [the witness] and the fact that [the witness] possessed information relevant to this case." *Gutierrez*, 382 F.3d at 733; *see also Buffone v. Rosebud Rests., Inc.*, Civil Action No. 05 C 5551, 2006 U.S. Dist. LEXIS 58994, at *9 (N.D. Ill. Aug. 21, 2006) ("This court has repeatedly held that parties need not supplement Rule 26(a)(1) disclosure of a witness, if the witness is identified during deposition."). *Gutierrez* is instructive on this point. In that case, the Seventh Circuit refused to strike an affidavit of a person "not listed in any of the defendants' discovery responses" because she had been identified at a

---

[1] Sterling Bank would not oppose a short extension of the discovery deadline to accommodate the availability of these witnesses during the holiday season, so long as Sellers do not exceed the number of depositions permitted by the Federal Rules of Civil Procedure.

7

deposition, 382 F.3d at 732, but *did* strike the affidavit of an employee who appeared on a document *not* produced in the litigation and who defendants' 30(b)(6) witness denied knowing. *Id.* at 734. Here, not only has Sterling Bank identified *each* Damian client in its discovery responses, but witnesses have been asked about certain of these Damian clients in depositions, and all appear in the critical document in this case for damages. *See Lujano v. Town of Cicero*, No. 07 C 4822, 2011 U.S. Dist. LEXIS 148913, at *19 n.3 (N.D. Ill. Dec. 23, 2011) (noting that "courts have consistently found that a party need not supplement its Rule 26 disclosure of a witness, if the witness is identified during a deposition").

Even if Sterling Bank's amended disclosures were untimely—and they are not—the proper remedy is not to strike them. In determining whether an untimely disclosure is justified or harmless, courts in this Circuit consider "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Banister v. Burton*, 636 F.3d 828, 833 (7th Cir. 2011) (quoting *Westefer v. Snyder*, 422 F.3d 570, 585 n.21 (7th Cir. 2005)).

Sellers cannot claim surprise because they have long known the identity of the Damian clients harmed by the invoice backdating scheme, and that these clients were likely to have relevant information. Sellers do not dispute this. Rather, Sellers claim that they "did not 'clearly and unambiguously' know that Sterling intended to call any of these witnesses at trial, or which of them Sterling intended to call." (Dkt. No. 93 at 5) ("To the extent Sterling argues that Sellers knew about these witnesses because they were Sellers' former clients [], this argument again overlooks the fact that Sellers had no knowledge of which—if any—of those witnesses Sterling intended to call at trial."). This is not what Rule 26(a)(1) requires or is intended to accomplish.

8

Rule 26(a)(1) requires disclosure of individuals "likely to have discoverable information"—not witnesses that a party intends to call at trial. Fed. R. Civ. P. 26(a)(1)(A)(i). By contrast, Rule 26(a)(3) requires parties to provide the list of witnesses that a party "expects to present [at trial] and those it may call if the need arises." Fed. R. Civ. P. 26(a)(3)(A)(i). The time for presenting a party's "will call" and "may call" witness lists is "at least 30 days before trial" unless otherwise ordered. Fed. R. Civ. P. 26(a)(3)(B).

Nor can Sellers claim prejudice. While Sellers argue that they cannot take more than ten depositions without leave of court, that prejudice is of their own making. When Sterling Bank disclosed Damian clients as potential individuals "likely to have discoverable information" on November 15, 2017, Sellers had taken only three depositions. On December 4, 2017, when Sterling Bank narrowed the list to five specific Damian clients, Sellers had taken only six depositions. That sellers chose not depose any of Damian's clients harmed by the invoice backdating scheme cannot qualify as prejudice.

Finally, no trial date has been set in this case, so the disclosures will have no effect on trial, and Sterling Bank has not acted in bad faith. Sellers have suggested in several depositions that they will argue that Damian's clients knew or should have known that Damian backdated its invoices. (*See* Exhibit 6 at 187:12-19.) Given that Damian did not inform its clients of the invoice backdating, (*see* Exhibit 7 at 35:15-36:1), Sterling Bank is entitled to amend its disclosures to add witnesses likely to have discoverable information that would rebut Sellers' arguments.

**II. SELLERS HAVE NOT MET THEIR BURDEN OF SEEKING LEAVE TO TAKE MORE THAN TEN DEPOSITIONS.**

This Court should not countenance Sellers' back-door attempt to take more than ten depositions. On October 6, 2017, Sellers moved for leave to take more than ten depositions.

9

(Dkt. No. 55.) On October 12, 2017, the Court denied Sellers' motion. (Dkt. No. 70.) Thus, Sellers have known since October (before taking any depositions) that they did not have leave to take more than ten depositions and would have to strategically determine which depositions to take. And, as set forth above, when Sterling Bank served its amended disclosures on November 15, 2017, Sellers had only taken three depositions, and by December 4, 2017, Sellers still had four depositions left.

Sellers have not even attempted to demonstrate that additional depositions are warranted or consistent with Rule 30(a)(2), and Rules 26(b)(1) and (2).[2] Fed. R. Civ. P. 30(a)(2)(A)(i) ("A party must obtain leave of court and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)…if the parties have not stipulated to the deposition and…the deposition would result in more than 10 depositions being taken…"); *Lopez v. Pastrick*, No. 2:05 cv 452, 2007 U.S. Dist. LEXIS 59093, at *3 (N.D. Ind. Aug. 7, 2007) (party seeking additional depositions bears the burden of showing that the request should be granted). A court should deny leave to take additional depositions where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2).

Here, Sellers have known the identities of Damian's clients overcharged as a result of the invoice backdating scheme since at least January 2017, yet chose not to depose a single one, even though they have indicated that they will argue that Damian's clients knew of the backdating scheme. Sellers could and have sought to depose witnesses not on Sterling Bank's 26(a)(1) disclosures, and chose not to do so here. Having made their strategic decision, Sellers should not be permitted to take more than ten depositions on the pretense that Sterling Bank's disclosures are untimely.

---

[2] Sellers' citation to *CIVIX-DDI, LLC v. Hotels.com GP LLC* is inapposite as it does not address Rule 30(a)(2). No. 05 C 06869, 2011 U.S. Dist. LEXIS 4947 (N.D. Ill. Jan. 19, 2011).

## CONCLUSION

For the reasons stated above, Sterling Bank respectfully requests that the Court deny Defendants' motion to strike and their request, in the alternative, to take more than ten depositions.

Dated:  December 13, 2017          By:   /s/ Anand C. Mathew

    Peter C. Harvey (*Pro Hac Vice*)
    E-mail:  pcharvey@pbwt.com
    Kathrina Szymborski (*Pro Hac Vice*)
    E-mail:  kszymborski@pbwt.com
    Jeffrey Hughes (*Pro Hac Vice*)
    E-mail: jhughes@pbwt.com
    PATTERSON BELKNAP WEBB & TYLER LLP
    1133 Avenue of the Americas
    New York, NY 10036
    Telephone:  (212) 336-2000
    Facsimile:   (212) 336-2222

    Paula E. Litt
    IL 6187696
    E-mail:  plitt@honigman.com
    Anand C. Mathew
    IL 6299435
    Email: amathew@honigman.com
    HONIGMAN MILLER SCHWARTZ
    & COHN LLP
    155 North Wacker Drive, Suite 3100
    Chicago, IL 60606
    Telephone:  (312) 701-9300
    Facsimile:  (312) 701-9335
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing has been served December 13, 2017 via Court's CM/ECF system on all counsel of record.

By: /s/ Anand C. Mathew