IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STERLING NATIONAL BANK,

        Plaintiff and
   Counterclaim Defendant,

          v.

BERNARD N. BLOCK, Trustee,
*et al.*,

        Defendants and
   Counterclaim Plaintiffs.

Case No. 16 C 9009

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Defendants Bernard N. Block, et al.'s Motion for Pre- and Post-Judgment Interest (Dkt. No. 177) is denied and Defendants' Motion for Costs (Dkt. No. 176) is granted in part and denied in part.

## I. BACKGROUND

In addition to briefly reciting the relevant facts here, the Court incorporates the facts set forth in its earlier ruling, *Sterling Nat'l Bank v. Block*, No. 16 C 9009, 2019 WL 2491642, at *1 (N.D. Ill. June 14, 2019). Defendants (the "Sellers") sold their company, Damian, to Sterling National Bank ("Sterling") pursuant to a stock purchase agreement (SPA). Sterling agreed to pay $25 million to purchase Damian, $2 million of which Sterling would place into an escrow account for future indemnification claims

under the SPA. In the SPA, the Sellers represented to Sterling that they were providing a full and accurate picture of Damian's finances, liabilities, and obligations.

After the Damian acquisition closed, Sterling discovered an allegedly improper scheme in which Damian overcharged its clients for years. Sterling then invoked the SPA's indemnification clause and requested that the Sellers use the money in escrow to indemnify Sterling for its losses resulting from the alleged scheme. The Sellers refused to indemnify Sterling, and Sterling sued, arguing that the Sellers' failure to disclose this scheme and to indemnify constituted a breach the SPA. The parties cross-moved for summary judgment, and in June of 2019, this Court entered summary judgment for the Sellers. The Court held that it need not resolve whether the Sellers breached the SPA by making false representations and warranties, because Sterling failed to give timely notice of its indemnification claim, forfeiting its rights to indemnification, its sole remedy for claims arising under the SPA. *See Sterling*, 2019 WL 2491642, at *5. The Court entered final judgment on liability on June 14, 2019, before reaching a conclusion on the appropriate remedy or damages for the Sellers. The Sellers now move for pre- and post-judgment interest under Federal Rule of Civil Procedure 59(e), and for costs under Rule 54(d).

## II.  **PREJUDGMENT INTEREST**

### A.  **Timeliness**

A motion for prejudgment interest filed after entry of final judgment is considered under Federal Rule of Civil Procedure 59(e) as a motion to alter or amend judgment. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175–78 (1989); *First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 572 (7th Cir. 2009). The Supreme Court reasoned that prejudgment interest "is an element of [the plaintiff's] complete compensation," and that it is therefore "intertwined in a significant way with the merits of the plaintiff's primary case as well as the extent of his damages." *Osterneck*, 489 U.S. at 176. However, Rule 59(e) motions are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (noting that district courts should use their discretion under Rule 59(e) to award pre-judgment interest when such an award would "fix[] an error that… slipped into the case").

Sterling argues that the Sellers' request for prejudgment interest is untimely because they failed to request such relief in their motion for summary judgment. Sterling claims that the Sellers "moved for summary judgment, but never sought pre-judgment interest," nor "request[ed] pre-judgment interest as part of their

defense in their Answer." (Pl.'s Resp. at 3, Dkt. No. 183.)
Contrary to Sterling's assertion, a brief review of the record in
this case reveals that the Sellers clearly stated their intent to
seek pre-judgment interest. Counts I, II, and IV of the Sellers'
counterclaims stated that the Sellers are seeking pre- and post-
judgment interest. (*See* Answer ¶¶ 32, 39, 53, Dkt. No. 20.)  Soon
after the Sellers filed their counterclaims, counsel for Sterling
raised this issue in court:

> [T]here is a counterclaim filed in the case. … The
> response we got back was, "Well, we think you owe us the
> money plus interest at 12 percent." There's a debate
> over the interest rate. … If they give us the wiring
> instructions, at the very least, the principal can be
> paid. We can fight about the interest rate at a later
> time…

(Tr. Dec. 7, 2016.) The Sellers raised their intent to seek
interest again in a motion that was later argued in court. (Mot.
for Add. Dep. ¶ 1, Dkt. No. 55 ("Sellers filed a counterclaim and
are seeking damages in the amount of $2,000,000… plus interest.").)
This is not a case where the prevailing party raised the issue of
prejudgment interest "for the first time in a Rule 59(e) motion,
after summary judgment was entered." *First State Bank of Monticello
v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 572 (7th Cir. 2009).

Additionally, the Court briefly addressed the matter of
prejudgment interest in its summary judgment opinion. *See
Sterling*, 2019 WL 2491642, at *6-7. After denying summary judgment

to Sterling on all counts in its Complaint because it is not entitled to indemnification, the Court noted that the Sellers had asserted four counterclaims in their Answer. The Court found that the Sellers had only clearly moved for summary judgment on their request for a judgment declaring that: (a) Sterling is not entitled to indemnification from the escrow; (b) Sterling's December 11, 2015, letter to the escrow agent in which Sterling invoked the indemnity clause is void; (c) Sellers are entitled to the money held in escrow; and (d) the Sellers are entitled to prejudgment and post-judgment interest at the rate of 12% annum. *Id*. at *7. The Court held that a declaration regarding (a), that Sterling is not entitled to indemnification, would be redundant given that the Court had already granted summary judgment in the Sellers' favor on this issue. Because the Sellers' summary judgment motion and briefing only argued the substance of (a), the Court declined to enter a declaratory judgment on issues (b), (c), and (d). *Id*.

Ideally the Sellers would have more explicitly re-stated their request for prejudgment interest in their motion for summary judgment, rather than incorporating it by reference to their request for "summary judgment on their Counterclaim." (Defs.' Mot. for Summary J. at 2, Dkt. No. 128.) However, even if they had, a full briefing of pre-judgment interest at that point would have been premature. *See Chicago Imp., Inc. v. Am. States Ins. Co.*, No.

09 CV 2885, 2016 WL 4366494, at *2 (N.D. Ill. Aug. 16, 2016)
("While arguments presented for the first time in a Rule 59(e)
motion ordinarily are deemed forfeited, the grant or denial of
prejudgment interest is an exception to this general rule because
elsewise parties would be required to put the cart before the horse
and argue about prejudgment interest before the underlying issues
of liability and damages have been resolved."). Therefore, the
Court finds the Sellers' motion for prejudgment interest timely.
Under Rule 59(e), the Court has reconsidered its decision to treat
the Sellers' arguments for prejudgment interest as waived, and
will now assess whether, and to what extent, prejudgment interest
is appropriate.

**B. Exclusive Remedy under the SPA**

Illinois law governs the parties' dispute over whether the
Sellers are entitled to prejudgment interest. *See Travelers Ins.
Co. v. Transp. Ins. Co.*, 846 F.2d 1048, 1053 (7th Cir. 1988)
(courts apply state law to an award of prejudgment interest in
diversity suits). Under Illinois law, "the general rule is that
prejudgment interest cannot be awarded unless by statute or
agreement of the parties." *In re Air Crash Disaster Near Chicago,
Illinois, on May 25, 1979*, 644 F.2d 633, 638 (7th Cir. 1981). The
relevant statute is the Illinois Prejudgment Interest Act (the
"Act"), which grants interest of 5% per year for all moneys after

they become due on any… instrument of writing… and on money withheld by an unreasonable and vexatious delay of payment." *W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.*, 794 F.3d 666, 680 (7th Cir. 2015) (citing 815 ILCS 205/2).

Sterling argues that the Sellers cannot recover prejudgment interest under the Act because they waived the right to pursue statutory prejudgment interest by entering into the SPA. Sterling derives this argument from Section 8.09 of the SPA, which contains two relevant portions. The first identifies indemnification as the sole remedy for claims arising out of the SPA:

> [The] sole and exclusive remedy with respect to any and all claims… for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement, shall be pursuant to the indemnification provisions…

(SPA § 8.09 (the "exclusive remedy provision"), Ex. A to Pl.'s Resp., Dkt. No. 183-1.) Section 8.09 also includes a broad waiver of any rights parties may have had outside the SPA's indemnification procedures:

> [E]ach party waives, to the fullest extent permitted under Law, any and all rights… for any breach of any representation, warranty, covenant, agreement, or obligation set forth herein or otherwise relating to the subject matter of this Agreement it may have against the other parties hereto… arising under or based upon any Law except pursuant to the indemnification provisions…

(*Id.* (the "waiver provision").)

Contract interpretation "starts with the language of the agreement, which must not be interpreted in a way contrary to the plain, obvious, and generally accepted meaning of its terms." *Asta, L.L.C. v. Telezygology, Inc.*, 629 F. Supp. 2d 837, 843 (N.D. Ill. 2009) (citing Illinois law). Courts interpret written contracts "according to the conventional meaning of their terms, that is, literally." *Bank of Am., N.A. v. Moglia*, 330 F.3d 942, 946 (7th Cir. 2003). This is "especially appropriate in the case of a negotiated contract involving substantial stakes between commercially sophisticated parties… who know how to say what they mean and have an incentive to draft their agreement carefully." *Id*.

According to the Sellers, because Section 8.09 does not mention pre-judgment interest, or what to do when one party "improperly block[s] disbursement of the escrow" funds, that section is too vague to constitute a waiver of pre-judgment interest in this context. (Defs.' Reply at 7, Dkt. No. 188.) The Sellers are correct in that the SPA does not specifically contemplate what to do if the buyer makes an indemnification claim on the escrow amount, preventing release of the escrow amount to the seller, and then the buyer's indemnification claim fails in litigation because it was untimely. However, the SPA need not predict every scenario to which § 8.09 might apply. It is clearly

written to apply to every legal dispute arising out of the contract other than circumstances involving fraud, criminal activity, or intentional misconduct. (*See* SPA § 8.09.)

The Sellers argue that "prejudgment interest could not have been waived because there is no evidence that the parties anticipated this kind of claim." (Defs.' Reply at 7.) The Seventh Circuit has noted that Illinois courts consistently enforce waivers "[w]hen they are clear and unambiguous." *Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 577 (7th Cir. 1995). Before a party is deemed to have "waived or relinquished a right or remedy available to it under law, a clear and distinct manifestation of such an intent must be found." *Am. Nat. Bank & Tr. Co. of Chicago v. K-Mart Corp.*, 717 F.2d 394, 398 (7th Cir. 1983). However, in this case, Section 8.09 explicitly states that indemnification is the exclusive remedy available to the parties. *See id.* (holding, in landlord-tenant dispute, that the lease did not provide the exclusive remedies available to the tenant because the lease did not "state that remedies provided in the contract are mandatory, nor does it indicate, expressly or impliedly, that those remedies are to be exclusive"). Section 8.09 clearly forecloses all remedies for breach of contract if the Sellers do not follow the SPA's indemnification procedures. This is the standard the Sellers urged the Court to hold Sterling to in ruling

on liability, despite the fact that the SPA does not specify what the available remedies are if Sterling discovers that Damian overcharged its customers. The Sellers must be held to the same standard now. The "breadth of a contractual provision need not detract from the clarity of its meaning." *Chicago Tribune Co. v. N.L.R.B.,* 974 F.2d 933, 937 (7th Cir. 1992).

A further indication that the parties anticipated "this kind of claim"—in which the Sellers seek prejudgment interest from Sterling—is SPA § 8.03. Section 8.03 specifies that Sterling "shall indemnify" the Sellers and "shall pay and reimburse each of them for *any and all Losses* incurred or sustained by, or imposed upon, the [Sellers] based upon, arising out of, with respect to or by reason of: any breach or non-fulfillment any covenant, agreement or obligation to be performed by [Sterling] under the SPA." (SPA § 8.03 (emphasis added).) The SPA defines "losses" as "all losses, damages, liabilities, deficiencies, Actions, judgments, *interest*, awards, penalties, fines, or out of pocket third party costs or expenses of whatever kind… " (SPA at 6 (emphasis added).) Because prejudgment interest is a "loss" within the meaning of § 8.03, the Sellers would have been able to seek prejudgment interest had they followed the SPA's indemnification procedures.

To preserve their ability to seek prejudgment interest, the Sellers would have had to give Sterling notice of their

indemnification claim either "reasonably promptly" or no later than 10 days after the Sellers became aware of their claim. (*See* SPA § 8.05(c).) The first $1 million from escrow was due to the Sellers on December 31, 2015, and the second $1 million was due 18 months after closing (which occurred on February 27, 2015). (*See* SPA § 2.02(b).) By making an indemnification claim, Sterling prevented the release of the funds from the escrow account to the Sellers. (*Id*.) Sterling invoked the indemnity clause for the full $2 million in escrow on December 11, 2015. The Sellers began to experience loss of interest on December 31, 2015, the day they would have otherwise received their first $1 million. To avoid forfeiting their ability to recover lost interest, the Sellers would have had to notify Sterling of their indemnification claim by December 21, 2015—ten days after they became aware that Sterling made an indemnification claim. (*See* SPA § 8.05(c).) This interpretation does not render an absurd result. *See Bank of Am., N.A. v. Moglia*, 330 F.3d 942, 946 (7th Cir. 2003) ("Even sophisticated lawyers and businessmen sometimes stumble in their use of language… or fail to anticipate contingencies that may make the language of the contract yield absurd results if it is read literally, and if these circumstances are evident to the court the contract will not be interpreted literally."). The Sellers' obligation to make an indemnification claim in response to

Sterling's indemnification claim is onerous, but it is not absurd. Section 8.09 is clear that following the SPA's indemnification procedures is the only way to pursue remedies under the SPA, and the parties explicitly waived any remaining statutory right to prejudgment interest that they may have had.

The Sellers point to a similar case from the Southern District of New York, in which the parties entered into a merger agreement, which stated that indemnification rights under the agreement were the "sole and exclusive remedies." *See Katzman v. Helen of Troy Texas Corp.*, No. 12 CIV. 4220, 2013 WL 1496952, at *4 (S.D.N.Y. Apr. 11, 2013). Seventeen months after closing, the acquirer "improperly block[ed] release of nearly $9.4 million in escrow funds." The court observed that because the escrow fund "was designed for a distinct purpose[:]… to compensate [acquirer] for later-discovered breaches by [the seller] of its representations in the Merger Agreement," a claim for prejudgment interest by the seller against the buyer was in "waters uncharted by [the] agreement." *Id*. at *5-6. As there was "no indication in the [agreement]… that the parties ever anticipated a controversy of this nature," the Court found that the exclusive remedies provision in the agreement did not prevent the seller from seeking statutory prejudgment interest. *Id*.

However, unlike the agreement at issue in *Katzman*, the SPA *does* indicate that the parties anticipated a controversy in which the buyer, Sterling, would have to indemnify the Sellers. SPA § 8.03, titled "Indemnification by Buyer," clearly contemplates the possibility. Additionally, SPA § 8.06, which concerns the accumulation of interest once an indemnifying party fails to pay for losses in certain circumstances, reinforces the notion that either Sterling or the Sellers could ultimately be liable for payments under the indemnification provisions. Section 8.06 states, "[o]nce a Loss is agreed to… or finally adjudicated to be payable… the Indemnifying Party shall satisfy its obligations… by wire transfer of immediately available funds *from the Sellers or the Buyer, as the case may be.*" (SPA § 8.06 (emphasis added).)

Two other contractual provisions support the conclusion that the SPA does not allow parties to seek statutory prejudgment interest independent of making an indemnification claim. First, the parties' Escrow Agreement provides a mechanism for the money in escrow to gain interest. (*See* Escrow Agreement at 1, 13, Ex. B to Pl.'s Resp., Dkt. No. 183-2.) The Escrow Agreement authorizes the escrow agent to invest the escrow amount "pursuant to joint written instructions signed by" the Sellers and Sterling. (*Id.* at 13.) Sterling contends, and the Sellers do not dispute, that the Sellers never made any effort to instruct the escrow agent to

invest the escrow amount. Allowing the Sellers to obtain statutory prejudgment interest on the escrow amount now would render both SPA § 8.09 and the Escrow Agreement superfluous. Second, SPA § 8.06 specifies that the indemnifying party must pay a 12% interest rate on a loss that (1) the indemnifying party "agrees to," or (2) is "finally adjudicated to be payable" in a "non-appealable adjudication." (*See* SPA § 8.06.) The fact that the SPA provides a process for the parties to recover post-judgment interest while being silent on prejudgment interest indicates that the SPA precludes recovery of statutory prejudgment interest.

The Sellers also contend that SPA § 10.09 blocks the application of SPA § 8.09 to their prejudgment interest claim, because Section 10.09 requires waivers to "expressly identify" what is being waived. But Section 10.09, titled "Amendment and Modification; Waiver," is not related to Section 8.09. Section 10.09 outlines the parties' ability to waive provisions of the SPA. It states that no waiver of any SPA provision shall be effective "unless explicitly set forth in writing and signed by [the parties]." (SPA § 10.09.) A waiver of one SPA provision will not operate to waive any other SPA provision unless such other provision is "expressly identified." (*Id.*) Section 10.09 does not modify or add additional requirements to Section 8.09, in which

parties waive all remedies and rights other than indemnification.
This argument fails.

Finally, the Sellers argue that SPA § 8.09's exceptions for
intentional misconduct apply to this case. The SPA provides that
indemnification is the "sole and exclusive remedy" for all claims
"other than claims arising from fraud, criminal activity or
intentional misconduct." (SPA § 8.09.) The parties' waiver of "any
and all rights, claims and causes of action" does not apply to
"any remedy on account of any party's fraudulent, criminal or
intentional misconduct." (*Id.*) The Sellers contend that Sterling's
December 11, 2015 letter, in which it gave notice to the escrow
agent that it was making an indemnification claim for the full $2
million in escrow, was intentional misconduct because "Sterling
knew or should have known that it had no claim to the funds in the
escrow." (Defs.' Reply at 6.) This Court held that Sterling's
notice was untimely under SPA § 8.05, freeing the Sellers of their
obligation to indemnify. *Sterling*, 2019 WL 2491642, at *6. However,
late notice is different from intentional misconduct. The Sellers
have not established any facts that would indicate Sterling's late
notice was anything other than a faulty reading of its obligations
under the SPA. And the fact that Sterling made a claim for the
full $2 million in escrow, when the Sellers contend that in fact
Sterling would only have been able to recover approximately

$700,000, is insufficient to establish intentional misconduct. Thus, this argument fails. The Sellers cannot recover prejudgment interest.

### III. <u>POST-JUDGMENT INTEREST</u>

The Sellers urge that they are entitled to post-judgment interest on the $2 million in escrow beginning on June 14, 2019, the date of the Court's summary judgment opinion. Civil litigants who win money judgments in district courts are entitled to post judgment interest. *Pace Commc'ns, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 591 (7th Cir. 1994). 28 U.S.C. § 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961. The statutory rate for post-judgment interest is the weekly average one-year constant maturity Treasury Yield for the calendar week preceding the date of the judgment. *Id*. Parties can contract around the statutory post-judgment interest rate. *See Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat., Inc.*, 253 F.3d 1011, 1020 (7th Cir. 2001) ("It is well established that parties can agree to an interest rate other than the standard one contained in 28 U.S.C. § 1961."). Sterling argues that SPA § 8.06 displaces the statutory post-judgment interest regime. Section 8.06 specifies that the indemnifying party must pay a 12% interest rate on a loss that (1) the indemnifying party "agrees to," or (2) is "finally adjudicated

to be payable" in a "non-appealable adjudication." (*See* SPA § 8.06.) Interest begins to accumulate five days after the indemnifying party fails to pay after either agreeing to pay or receiving a non-appealable adjudication. (*Id.*)

The parties dispute whether SPA § 8.06 displaces 28 U.S.C. § 1961, and if so, whether a "non-appealable decision" has taken place. The answer to this problem can be simplified into two conclusions: the Sellers are not entitled to either statutory or contractual post-judgment interest because (1) 28 U.S.C. § 1961 requires a "money judgment," and (2) Section 8.06 of the SPA requires a "non-appealable adjudication," neither of which the Sellers have.

First, the Court's June 14, 2019 summary judgment opinion is not a money judgment. The Seventh Circuit has not defined "money judgment." The Ninth and Third Circuit have defined "money judgment" in the 28 U.S.C. § 1961 context as requiring: (1) "an identification of the parties for and against whom judgment is being entered," and (2) "a *definite* and *certain* designation of the amount which plaintiff is owed by defendant." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1101 (9th Cir. 2011) (citing *Eaves v. Cty. of Cape May*, 239 F.3d 527, 534 (3d Cir. 2001)). This definition accords with prior Seventh Circuit interpretations of

the meaning of "money judgment" in § 1961. In *EEOC v. Gurnee Inns, Inc.*, 956 F.2d 146 (7th Cir.1992), the Seventh Circuit considered a § 1961 post-judgment interest award pegged to a district court order that the defendant pay specified sums to a number of employees, "less appropriate payroll deductions." *Id*. at 147. The court concluded that this order was a "money judgment," stating, "the awards did not lose their character as sums certain simply because they were subject to the mechanical task of computing the payroll deductions." *Id*. at 149. In *Disney v. Pritzker*, 411 F.2d 658 (7th Cir. 1969), the Seventh Circuit found a § 1961 interest award was properly based on a "money judgment" when the judgment stated: "'It Is Further Ordered and Decreed that defendants pay or cause to be paid to plaintiffs the sum of $56,953.56." *Id*. at 659. The judgment gave the defendants two options: (1) pay plaintiffs that sum directly, or (2) let the Treasurer of the United States, which was holding that sum for defendants pending proceedings in a different tribunal, release the money to plaintiffs. *Id*. The court held that such an order is a "money judgment" because "regardless of the route taken by defendants, plaintiffs were recovering on the money judgment awarded in the decree." *Id* at 660. Thus, Seventh Circuit precedent indicates that a money judgment must contain a definite designation of the amount that the prevailing party is owed.

Count VIII of Sterling's Complaint asserted that the Sellers breached the SPA by not indemnifying Sterling for the losses it incurred due to the alleged overcharging scheme. The Court's June 14, 2019 opinion entered summary judgment in the Sellers' favor on Count VIII. *Sterling*, 2019 WL 2491642, at *6. The Court held that Sterling failed to give prompt notice of its indemnification claim as required by the SPA, relieving the Sellers of their indemnification obligations. *Id*. Because indemnification is the sole and exclusive remedy under the SPA, the Court denied summary judgment on the remainder of Sterling's claims. *Id*. The Court noted that though the Sellers had included several counterclaims in their Answer, they did not present affirmative arguments for summary judgment on their counterclaims in their Motion for Summary Judgment. For that reason, and because the Court had already established that the Sellers were not liable for Sterling's losses, the Court denied summary judgment for the Sellers on their counterclaims as moot and redundant. The Court did not determine a certain amount of money that Sterling owes the Sellers. Therefore, the Court's opinion was not a money judgment. *See Merk v. Jewel Food Div., Jewel Companies, Inc.*, No. 85 C 7876, 1994 WL 247119, at *2 (N.D. Ill. June 6, 1994) (holding that the Court's opinion granting "plaintiffs' motion for entry of judgment on all issues of liability" was not a money judgment under 28 U.S.C.

§ 1961 because there had been no decision on the issue of damages and the amount of damages were not "sufficiently ascertainable" at the time of the judgment).

Second, the Court's summary judgment order is not "non-appealable" per SPA § 8.06. Indeed, Sterling has already appealed that order to the Seventh Circuit. The Sellers have not identified, and the Court cannot conceive of, any reason why the Court should not enforce SPA § 8.06 according to its unambiguous terms. Thus, the Sellers are not eligible for post-judgment interest either under 28 U.S.C. § 1961 or the SPA.

## IV.   COSTS

Pursuant to Federal Rule of Civil Procedure Rule 54(d)(1), costs other than attorneys' fees "should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). A court awarding costs asks first "whether the cost imposed on the losing party is recoverable" and if so, "whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000). Recoverable costs include fees of the clerk and marshal, fees for transcripts, witness fees and expenses, fees for copies of papers necessarily obtained for use in the case, and docket fees. See 28 U.S.C. § 1920. Although a district court has discretion when awarding costs, the "discretion is narrowly confined because of the strong presumption created by Rule 54(d)(1)

that the prevailing party will recover costs." *Graham v. AT&T Mobility, LLC*, 247 F. App'x 26, 31 (7th Cir. 2007).

The Sellers seek costs in five categories: (1) $3,058.78 for service of summons and subpoena; (2) $11,461.65 for printed or electronically recorded transcripts; (3) $3,724.50 for copies of materials necessarily obtained for use in this case; (4) $334.50 for rental of two conference rooms for depositions; and (5) $20 in docket fees under 28 U.S.C. § 1923. The $20 docket fee is statutory, requires no supporting documentation, and is approved. The Court will consider the remaining four categories in turn.

## A. Service

The Sellers seek costs for service on 18 individuals and entities. Sterling raises a variety of objections to costs of service, including that the Sellers seek to recover excessive rates. 28 U.S.C. § 1920(1) permits the Court to assess costs for clerk and marshal fees, a category that includes costs associated with the service of subpoenas. *Williams v. Fico*, No. 11 C 1105, 2015 WL 3759753, at *3 (N.D. Ill. June 15, 2015). The Sellers used private process servers instead of the U.S. Marshals Service. The Seventh Circuit has indicated that a prevailing party can recover the costs of using a private process server if those costs do not exceed what the U.S. Marshals Service would charge. *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996). The Marshals' current

rate is $65 per hour for personal service of process, as well as any travel costs or out-of-pocket expenses. *See* 28 C.F.R. § 0.114(a)(3). The invoices that Sellers submitted do not indicate how long service took, or the miles traveled. As such, the Court cannot calculate the hourly cost or mileage breakdown. Therefore, the Court will award only the $65 minimum charged by the U.S. Marshal's Service for each service attempt. Fees for unsuccessful and repeated attempts at service are recoverable pursuant to 28 C.F.R. § 0.114(f). *See Ayala v. Rosales*, No. 13-CV-04425, 2016 WL 2659553, at *4 (N.D. Ill. May 9, 2016). Additionally, 28 U.S.C. § 1920(3) allows recovery of witness fees. The prevailing party can recover the statutory amounts prescribed in 28 U.S.C. § 1821. *See Chicago Coll. of Osteopathic Med. v. George A. Fuller Co.*, 801 F.2d 908, 910 (7th Cir. 1986). 28 U.S.C. § 1821 currently limits witness fees to $40 per day in addition to normal travel expenses. Because the invoices that Sellers submitted to not indicate witness's travel expenses, the Court will award only the $40 daily witness fee where Sellers seek witness fees in excess of $40.

Sterling argues that the Sellers cannot recover for service of Tango and Flores because the Sellers did not ultimately depose those individuals. However, whether a cost is necessary must be made in light of the facts known at the time of the deposition. *Dual-Temp of Illinois, Inc. v. Hench Control Corp.*, No. 09 CV

00595, 2015 WL 3896928, at *3 (N.D. Ill. June 23, 2015). At the time the Sellers issued subpoenas to Tango and Flores, the Sellers reasonably believed their depositions would be necessary, as Sterling had listed both individuals as potential witnesses under Rule 26. Thus, the cost of serving these individuals is recoverable. Finally, Sterling correctly notes that the invoices for service on Voss and Power Temp contain no indication of who was served, and what case such service was connected to. (*See* Sellers 000011, 000019, Ex. A to Bill of Costs, Dkt. No. 176.) This documentation, along with the itemized bill that Sellers' counsel submitted to its client, is insufficient. The Court will not award costs of service on Voss and Power Temp.

Accordingly, the Court awards $1,610 total for service, broken down as follows:

    Briscoe: $65
    Molex: $65 + $65 + $40 ($170)
    Menkes: $65 + $40 ($105)
    WLRK: $65
    Leavenworth: $50
    Bavone: $65 + $40 ($105)
    Tango: $65 + $40 ($105)
    Flores: $65 + $65 ($130)
    Gamboa: $65
    Andriacchi: $65 + $65 + $65 + $65 ($260)
    Bavone: $65
    Hoque (Reassent): $65
    Reassent Minnesota: $35
    Wolf Retail: $65 + $65 + $65 ($195)
    Professional Personnel: $65
    Flexible Staffing: $65

## B. Transcripts

28 U.S.C. § 1920(2) allows the prevailing party to recover costs for "printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Sterling objects to $4,206.45 of the $11,461.65 in transcript costs that the Sellers seek. Sterling argues that the transcripts for the depositions of Himel, Block, Andriacchi, Briscoe, Bavone, Zalewski, and Sweet-Anglim are not recoverable costs because the Sellers did not use any of these transcripts in their summary judgment briefing. However, as the Seventh Circuit has explained, the "determination of necessity under 28 U.S.C. § 1920… must be made in light of the facts known at the time of the deposition, without regard to intervening developments that render the deposition unneeded for further use." *Mother & Father v. Cassidy*, 338 F.3d 704, 712 (7th Cir. 2003). The Sellers have explained the necessity of obtaining transcripts as follows: the Sellers needed a record of Sterling's deposition of Block, the lead named defendant in this case; the Sellers cited to the Himel, Andriacchi, Briscoe, and Bavone depositions in their response to Sterling's Statement of Facts; and Sterling listed Sweet-Anglim and Zalewski as Rule 26 potential witnesses. These explanations are sufficient to satisfy the Court that the transcripts were necessary in light of the facts known to the Sellers at the time. Additionally, the

Sellers seek per-page rates permitted under the local rules. (See N.D. Ill. Local Rule 54.1 (limiting the per-page cost for deposition transcript originals at $3.65). Accordingly, the Court awards $11,461.65 in transcript costs.

## C. Copies

The $3,724.50 that Sellers seek for "costs of making copies of any materials where the copies are necessarily obtained for use in the case," *see* 28 U.S.C. § 1920(4), represents two categories of costs: (1) $162 in costs of the court reporter to scan and copy exhibits used at depositions, and (2) $3,562.50 in costs of converting electronically stored information (ESI) into a readable format. The first category is unopposed, and the Court approves it. As for the second, the Seventh Circuit has held that the costs of "converting computer data into a readable format" in response to the opposing party's discovery request are recoverable under § 1920. *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). The Seventh Circuit has not otherwise ruled on the extent to which such costs can be taxed against a non-prevailing party under section 1920. *See In re Text Messaging Antitrust Litig.*, No. 08 C 7082, 2014 WL 4343286, at *2 (N.D. Ill. Sept. 2, 2014). However, courts in this district have observed the following distinction:

> ESI discovery costs associated with the conversion of ESI into a readable format, such as scanning or otherwise converting a paper version to an electronic version or converting native files to TIFF (if agreed upon by the

parties to be the production format), are compensable under § 1920(4). But costs related to the gathering, preserving, processing, searching, culling and extracting of ESI simply do not amount to "making copies" and thus are non-taxable.

*Massuda v. Panda Express, Inc.*, No. 12 CV 9683, 2014 WL 148723, at *6 (N.D. Ill. Jan. 15, 2014) (collecting cases).

Sterling argues that the Sellers have not sufficiently demonstrated that their e-discovery invoices reflect the cost of converting electronically stored information into a readable format. To support this argument, Sterling points to one technically complex description and asserts that it does not sufficiently demonstrate that Sellers incurred this cost in connection with conversion. (*See* Sellers 000050, Ex. C to Bill of Costs ("Create complex field map direct load documents and images to workspace; update DT index.").) However, the Sellers cannot reasonably be expected to require their ESI vendors to provide invoices that perfectly track the language of § 1920(4). Moreover, a prevailing party is not required to submit a bill of costs containing a description "so detailed as to make it impossible economically to recover" copying costs. *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). Instead, the Sellers were required to provide "the best breakdown obtainable from retained records." *Id*. Sellers' counsel reviewed the invoices of its ESI vendor and highlighted

those costs associated with loading native images into a database and converting them into a readable format. This is sufficient. The Court awards $3,724.50 in copy costs.

### D. Conference Rooms

Finally, Sterling objects to the $334.50 that the Sellers seek for the rental of two conference rooms for two depositions. The Seventh Circuit has held that district courts may exercise their discretion in awarding costs "incidental" to taking depositions. *Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995) (upholding per diem costs and court reporter's delivery charges as incidental to depositions). Here, the Sellers have provided invoices that show they rented the two conference rooms for depositions in this case. (*See* Sellers 000029, 000033, Ex. B to Bill of Costs.) The Sellers rented these conference rooms to conduct depositions near the homes of witnesses who reside in Carrol, Illinois and in Virginia—both locations that are quite far from Sellers' counsel's office in Chicago. *Compare Freeman v. Blue Ridge Paper Prod., Inc.*, 624 F. App'x 934, 943 (6th Cir. 2015) (unreported) (approving conference room rental costs when the prevailing party "provided an adequate explanation that sufficiently connected the room rental cost to the actual depositions, rather than general business overhead—specifically, the convenience to the witnesses and the reduction of otherwise

taxable travel costs"), *with Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, No. 13 C 321, 2016 WL 316865, at *8 (N.D. Ill. Jan. 26, 2016) (holding that the prevailing party did not sufficiently explain why it was reasonable and necessary to rent conference rooms for deposition prep). Therefore, the Sellers' request for $334.50 in conference room rental costs is granted.

### V.   CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.   The Sellers' Motion for Pre- and Post-Judgment Interest (Dkt. No. 177) is denied.

2.   The Court approves the Seller's Bill of Costs (Dkt. No. 176) in part, for a total cost award of $17,150.65.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 10/10/2019